UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF JAMES ROBERT CHAMBERS,

         PLAINTIFF,

                             CIVIL ACTION NO. 03-73342

V.

                             HONORABLE ARTHUR J. TARNOW

COUNTY OF MACOMB, *ET AL.*,         UNITED STATES DISTRICT JUDGE

         DEFENDANTS.          MAGISTRATE JUDGE KOMIVES

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT [D/E #59], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [D/E # 82], AND DENYING AS MOOT DEFENDANT'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF [D/E # 112]

### Introduction

This case begins with a poorly made-up prison bunk and ends with plaintiff's decedent (Chambers) dead of a heart attack. In between are two stories in direct opposition – one a tale of excessive force and deliberate indifference to an inmate's medical distress, the other a story about the need to quell a defiant prisoner who died despite timely and reasonable medical care.

Chambers, 61 years of age, entered Macomb County Jail in August 2001 to serve 45 days for a probation violation. Within his first week of incarceration, he complained of chest pains and was prescribed medication for high blood pressure and other heart problems.

A few days into his stay, Chambers lined up with other inmates for bunk inspections. At least one officer found the sheets on his bunk to be in disarray. Defendant Officer Dumas called him out of line to address the situation. Chambers did not respond immediately either because he was hard of hearing or because he was being defiant. Another inmate directed him to his bunk. When Chambers asked what was wrong with the bed, Dumas responded by removing the linens and by dumping Chambers' box of possessions on the bed. Dumas then demanded that he clean the mess up. Chambers allegedly replied, "You made the mess. You clean it up." He then walked away back

to the food line.

At that point, the parties' versions of the story begin to diverge.  According to Plaintiff, Defendant Officer Furton grabbed Chambers (by the neck), held his arm behind his back, rammed his head into a wall, and rushed him into the next room all while choking him.  In that area, Furton slammed Chambers to the floor.  Defendant Dumas and Johnson also jumped on and repeatedly struck Chambers.  After handcuffing Chambers, Defendants pulled him up from the ground.  Chambers was reportedly red-faced and gasping for air.  Under Plaintiff's version, while in a holding cell in the booking area, Chambers tried unsuccessfully to get the attention of jail staff about his medical condition.

According to Defendants, the facts show an unruly prisoner who refused to comply with both the jail rules and the direct orders of an officer.  When Chambers was escorted to the holding area, he refused to submit to handcuffing by swinging his arms.  As a result, the officer decided to force Chambers to the ground to subdue him.  Other officers came to the other officer's aid by placing the handcuffs on the disobedient prisoner.  According to Defendants, the officers' response merely included the necessary force needed in order to subdue the disturbing prisoner and fail to exemplify malicious or sadistic intent on behalf of the officers.  Once in the holding area, Plaintiff did express his need for medical attention and Defendants claim that the medical staff responded timely to the situation.

Defendant Nurse Howard later arrived on the scene and noted that Chambers had high blood pressure and was having difficulty breathing.  She stated that he was having a seizure and bleeding from his ear, both possible signs of head trauma.  Chambers' eyes rolled back in his head and his pupils were dilated, also possibly indicative of head trauma.  Nurse Howard requested and applied oxygen.  Later, Chambers' face turned purple  and CPR was commenced.  No blood pressure or vital signs were detected when the ambulance arrived.  Chambers was taken to Mt. Clemens General Hospital, where he was pronounced dead shortly after arrival.

The autopsy report indicated the cause of death was "arteriosclerotic and hypertensive heart disease with evidence of far advanced micronodular cirrhosis of the liver."  A large bruise (three

inches in diameter) was reported on one leg, along with several smaller bruises on the legs. The ER report indicated that Chambers had asphyxia type levity on his shoulders, possibly indicating that Chambers was choked.

## **Procedural History**

This court held a hearing in May 2005, relating to Defendant's First Motion for Summary Judgment. The court later ruled that the Summary Judgment Motion was granted in part and denied in part.  The state constitutional claims and intentional infliction of emotional distress claims were dismissed as were the gross negligence and assault and battery claims against Macomb County and Sheriff Hackel.  The motion was denied without prejudice as to plaintiff's 42 U.S.C. § 1983 claims based on the Eighth Amendment, gross negligence and assault and battery against the individual officers.  The Plaintiff was granted leave to file an amended complaint to restate the 42 U.S.C. § 1983 claims based on Eighth Amendment for both the individual officers and Macomb County and Mark Hackel.  Plaintiff was also permitted to restate his gross negligence, and assault and battery claims against the individual officers.

In late June, Plaintiff filed his first amended complaint which a count that claimed Macomb County and Marck Hackel violated Plaintiff's Eighth Amendment rights, actionable under § 1983. Plaintiff argued that the two Defendants knew about the frequent prisoner mistreatment at the facility.  Moreover, Plaintiff claimed that there were customs and policies in place at the time that were the major force in causing Chambers' constitutional rights to be violated.  These customs included: 1) failing to supervise officers and medical staff; 2) failure to train and supervise officers in proper use of force; 3) failure to control or discipline problem officers; 4) failure to require compliance of officers with established policies or rules of the jail; 5) failure to protect inmates from unprovoked attacks; and 6) utilizing actions constituting practices/customs for no legitimate penal purpose.   It was argued that as a result of the Defendant's customs/practices, Plaintiff's constitutional rights were violated which helped cause his death.

Plaintiff also restated his claims of gross negligence and assault and battery claims against all defendants, claiming that there was a duty to provide medical care because Plaintiff was in

confinement.  It was alleged that the duty was breached and the conduct was so reckless that there was a substantial lack of concern for whether an injury resulted to the Plaintiff.

Defendants have since filed their second motion for summary judgment, while Plaintiff filed a motion for summary judgment.

## Defendants' Second Motion for Summary Judgment

Defendants argue that Plaintiff's Eighth Amendment claims should be dismissed because Plaintiff fails to establish genuine issues of material fact that the individual Defendants' actions constituted excessive force.  Moreover, Defendants believe that even if genuine issues of material fact exist, they are shielded by the doctrine of qualified immunity.  Moreover, they argue, the gross negligence claims fail to establish a genuine issue of material fact on both gross negligence and proximate cause.  Finally, Defendants argue that the assault and battery claims should be dismissed because Plaintiff fails to establish a genuine issue of material fact as to whether the Defendants' actions were justified.

Defendants Macomb County and Hackel argue that the § 1983 claims against them should be dismissed because there is no genuine issue of material fact that there was a policy or custom that was the "moving force" behind any alleged constitutional violation.

### Excessive Force Claim Against Defendant Guards

#### *Deliberate Indifference v. Malicious and Sadistic Standard*

The test for claims of excessive force claims under the Eighth Amendment has both subjective and objective components.  In determining whether an Eighth Amendment violation occurred in the context of a prison disturbance, the subjective test is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson v. McMillan*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  The objective component of an Eighth Amendment claim is contextual and depends upon "contemporary standards of decency."  *Id*. at 9.  "When prison officials malicious and sadistically use force to cause harm, contemporary standards of decency are always violated . . . . This is true whether or not significant injury is evident."  *Id*. (citations omitted).

However, the Eighth Amendment prohibition does allow for *de minimis* uses of force that are not repugnant to the conscience of mankind. *Id.* at 9-10.

In determining whether an Eighth Amendment violation occurred in the context of conditions of confinement or with regard to providing medical care, the subjective component is whether the authorities displayed deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hudson v. McMillan*, 503 U.S. 1, 8 (1992).

The first question this court must address is which standard of review, deliberate indifference or malicious and sadistic, should be used for the excessive force claims against the guards. Determining what standard governs depends on how the court categorizes the incident. The court must decide whether the incident is a prison disturbance case which requires the malicious and sadistic standard or a prison condition case with its deliberate indifference standard.

Defendants argue the case is a prison disturbance case which places the burden of proving the actions were done "maliciously and sadistically for the very purpose of causing harm" on the Plaintiff. In *Whitley v. Albers*, the Supreme Court stated that the deliberate indifference standard normally used for cases where prisoners allege failure to attend to serious medical needs is inappropriate in cases where authorities use force to quell a prison riot or any other prison disturbance. 475 U.S. at 320.

The case that helped define the parameters of the term prison disturbance was *Hudson*. 503 U.S. 1. After arguing with guards, the plaintiff/prisoner in *Hudson* was handcuffed, shackled, and held down while guards kicked and punched him resulting in among other things a cracked dental plate. *Id.* at 4. In reversing the lower court's holding that a significant injury is essential to a prisoner excessive force claim, the Supreme Court explained that this standard is to be used in all prisoner disturbance cases "whether the prisoner disturbance is a riot or a lesser disruption." *Id.* at 6. Unlike the failure to attend to serious medical needs, guards "must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force... in haste, under pressure, and frequently without the luxury of a second chance." *Id.* The court held that the *Whitley* standard is to be used "whenever prison officials stand accused

of using excessive physical force in violation of the Cruel and Unusual Punishments Clause." *Id*. at 7.

Plaintiff argues that there was no jail riot or uprising that would warrant this more burdensome standard. Plaintiff asserts that the instant case is not a prison disturbance case but instead a condition of confinement where the standard of review is the less onerous deliberate indifference standard. Plaintiff cites a Supreme Court and a Sixth Circuit case for the proposition that certain prison guard responses should be considered condition of confinement cases where the deliberate indifference standard not the malicious and sadistic standard of prisoner disturbance cases should be used. *Hope v. Pelzer* 536 U.S. 730 (2002)*; Freeman v. Francis,* 196 F.3d 641 (6th Cir. 1999). Both are distinguishable from the case at hand.

In *Hope*, the court employed the deliberate indifference standard where the plaintiff fell asleep on a bus, did not awaken when told, as a result he got into a verbal exchange with a guard, and a wrestling matched ensued. *Hope*, 536 U.S. at 734-35. Once the prison disturbance was quelled, as a form of punishment his shirt was removed, he was then handcuffed to a hitching post and not allowed to use the facilities and allowed only two water breaks in seven hours. *Id*. When remanding the case, the Supreme Court used the condition of confinement standard, deliberate indifference, because the "safety concerns had long since abated" and there was a "clear lack of an emergency situation." *Id*. at 738.

The *Freeman* case involved a claim of excessive force when a prison guard responded to hospitalized inmate's request for some gauze by telling him to shut up and then assaulting him. *Francis*, 196 F.3d at 642-43. The court remanded the case to the district court with instruction to dismiss without prejudice for failure to exhaust his administrative remedies. *Id*. at 645. The court in *dicta* discussed the case as a condition of confinement. *Id*. at 644.

This court believes that the situation is much closer to the *Hudson* case rather than the cases that Plaintiff relies upon. The Supreme Court adopted the prison disturbances excessive force standard (malicious and sadistic) for all cases involving reactions to prisoner disturbances. *Hudson*, 503 U.S. at 6-7. Plaintiff has cited two cases which either use or imply the use of the deliberate

indifference standard.  Both are distinguishable in that neither one included an immediate response to a prison disturbance.  One case involved an unprovoked random act of violence, the other case involved a form of punishment long after the prison disturbance occurred.  Neither scenario is the case here.  In this case, the prisoner violated both prison code and orders to which the guards immediately responded with force.  The case law is clear that any case involving this type of action requires the malicious and sadistic standard.

### *No Genuine Issue of Material Fact*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Defendants argue that the facts do not exemplify a malicious and sadistic attack on Chambers.  Instead the facts show that the officers' response  was merely a use of measured force to quell an unruly prisoner who refused to comply with jail rules, orders, and refused to submit to handcuffing.  Taken in a light most favorable to Plaintiff, Defendants contend that Plaintiff has failed to satisfy both the subjective element since the response was with necessary force, without malice or sadistic intent and in good faith.  Defendants also argue that it fails the objective element because the alleged force of subduing the unruly prisoner was *de minimis*.

Defendants argue that the facts of this case closely parallels those of *Davis v. Agosto,* 89 Fed. Appx. 523 (6th Cir. 2004) (unpublished).  The plaintiff in *Davis* knocked the tea out of an officer's hands, ran out of his cell, refused to submit himself to being handcuffed and attempted to run away from the guards.  *Id*. at 524-25.  The guards attempted to spray an inmate's cell with mace, tackled him, used a baton to keep his head down, and placed a taser shield against his back.  *Id*.  Employing the sadistic and malicious standard, the Sixth Circuit concluded that police officers did not violate Davis' constitutional rights to be free from cruel and unusual punishment under the Eighth Amendment.  *Id*. at 526.

As for the objective element of an excessive force claim, Defendants argue that the use of

force was *de minimis* and not of the sort "repugnant to mankind."  Defendants characterize the situation as one where Chambers would not stay still, and the officers physically grabbed his arms and forced him to the ground.  Defendants argue that this fails to establish the requisite objective element required for an excessive force case.

Plaintiff strongly disagrees and believes that there are genuine issues of material fact that should cause this case to move forward.  This court agrees with Plaintiff.  It is disputed whether Chambers was actually resisting the officers.  The specifics of the guards conduct and amount of force is also in dispute, *i.e.* did the guards punch, throw his head against a wall, body slam him, jump on top of him, or do anything else.  Plaintiff argues that he was not resisting being handcuffed, Defendants argue that he did resist handcuffing.  Defendants argue that no one actually saw Chambers being struck.  But Plaintiff provides both circumstantial and direct evidence to the contrary. Numerous inmates testified that Chambers was violently thrown to the ground.  Randy Menendez stated that he witnessed the guards threw Chambers to the floor after grabbing his neck. He also swore he witnessed the guards making striking motions towards Chambers with their fists.

Plaintiff also has strong circumstantial evidence that the guards may have used excessive force from medical reports, medical personnel depositions and inmate interviews.  The medical reports and first responder testimony indicate that Chambers incurred a  seizure, was bleeding from his ear, his pupils were dilated, and his face had turned blue, all of which possibly indicate head trauma.   The inmate interviews include descriptions of the guards making striking motions in Chambers directions, the sound of slapping noises and yelling, and the fierce collaring and escorting of Chambers by the guards into the other room.

Defendants in their response have provided the court with an "Evidence Matrix" which refers to most of Plaintiff's evidence as either hearsay or inadmissible because it calls for speculation.  But many of these witnesses will testify at trial.  Thus, the woes of hearsay will not be at issue.  The statements of the inmates would be admissible under FRE 803(1) which allows witness statements that give present sense impression.  Moreover, the inmates statements although they may call for

speculation they also contain strong circumstantial evidence of a beating.  Finally, the certain inmate statements were made to Lt. Daniel Hethaler on September 5, 2001.

Whether the guards acted in a malicious or sadistic manner are issues that the jury must decide from the controverted facts presented.  Taken in the light most favorable to the Plaintiff, Plaintiff has alleged facts that show that Defendants' conduct violated Chambers' Eighth Amendment Rights.  Plaintiff's version of the story involves a minor rule infraction incurred by a hard of hearing, older gentleman with a heart condition who was to be in the jail for forty-five days who in response to not making his bed with the exact precision of the jail was then choked, punched, thrown to the floor, possibly sustained traumatic head injuries which later caused his death.

### *Qualified Immunity*

The two-part test for determining whether an official is entitled to qualified immunity was set forth by the United States Supreme Court in *Saucier v. Katz*:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question:  Taken in the light most favorable to the party asserting the injury, *do the facts alleged show the officer's conduct violated a constitutional right?*  This must be the initial inquiry.   In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established.  This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry.

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, *if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.*  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.

533 U.S. 194, 201-02 (2001)(Citation omitted; emphasis added.)  *See also Harlow v. Fitzgerald,* 457 U.S. 800, 817-18 (1982), and *Hearne Concrete Constr. Co. v. City of Ypsilanti,* 241 F. Supp. 2d 803 (E.D. Mich. 2003) (Taylor, J.).  In determining whether a right is clearly established, the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he encountered." *Saucier,* 533 U.S. at 202.

The individual Defendants re-raise the issue of qualified immunity.  At the May '05 hearing, this court found that the right to be free from excessive force while in custody was clearly established, stating, "[i]t is clearly established by the Supreme Court too [as well as the Sixth Circuit]." *Hudson v. McMillan*, 503 U.S. at 8; *Pelfrey v. Chambers*, 43 F.3d 1034, 1035-7 (6th Cir. 1995).  This court did allow Defendants to re-raise the issue once discovery had closed.  Defendants again argue that they did not violate an established constitutional right.  They continue that even if they did, they acted reasonably under the circumstances of needing to control a defiant prisoner who refused to obey orders.

Taken in the light most favorable to Plaintiff, the facts alleged taken as true show a violation of the Eighth Amendment's proscriptions against excessive force and the wanton infliction of pain. *See Hudson*, 503 U.S. 1.  As discussed above, taking the witnesses' recollections of the facts leading up to the decedent's death as true cast doubt on Defendants' assertion that the officers' actions were warranted.  Plaintiff's version of events shows that it should have been clear to a reasonable officer on the scene that the level of force applied was unnecessary and that the delay in seeking medical attention was unreasonable.  Thus, the court concludes that the individually named defendants are not entitled to qualified immunity.

### Municipal Liability

Municipal liability can attach where the constitutional violation results from the execution of government's policy, practice or custom.  *Monell v. Dept. of Soc. Servs. Of City of New York*, 436 U.S 658, 694 (1978).

In this case, Plaintiff argues that Macomb County and Sheriff Hackel's failure to supervise officers and medical staff, failure to train the officers in the proper use of force, failure to discipline officers known to harass, failure to require compliance with official policies, failure to protect inmates from attacks, and utilization of policies for no legitimate penological purpose resulted in the violation of Chambers' constitutional rights.

Defendants' Hackel and Macomb County argue that they should not be held liable under § 1983 since an official policy or custom was not the moving force behind the constitutional violation, if there even was a constitutional violation. Defendants also argue that Plaintiff's claim lacks evidentiary support and are merely conclusory allegations unable to withstand summary judgment.

Despite Defendants assertion to the contrary, Plaintiff provides evidence for these municipal liability claims from a number of different sources. The Macomb County Jail Prisoner Guide and individual correctional officers, administrative lieutenants, and Macomb County sheriffs state that a minor rule violation requires that no force be taken. Plaintiff has deposition testimony from current and former corrections officers, supervisors, and administrative lieutenants that question whether what Chambers did was an infraction, whether it was appropriate to pull apart the bedding in this particular case or at all. Plaintiff also has expert testimony in which the expert opines that it was a custom and/or practice of the Macomb County to harass and instigate prisoners for no penological reason. Moreover, he claims that Defendants failed to train and supervise in the use of force.

Taken in a light most favorable to non-moving party, Plaintiff has sufficiently pled a claim against both Macomb County and Sheriff Hackel. The expert opinion, the outlined protocol, and the deposition testimony is more than just the bare minimum in terms of factual support for his position. Since there are genuine issues of material fact in dispute, the claims against Macomb County and Sheriff Hackel will not be dismissed.

### Gross Negligence and Assault & Battery Claims

In Defendants' first motion for Summary Judgment, this court denied the motion as to dismissing the gross negligence claims against the individual officers. Defendants again raise the issue that none of the officers' actions can be deemed "reckless" considering that there was a defiant prisoner who resisted being handcuffed. Moreover, Defendants argue that the most immediate, efficient and direct cause of Chambers' death was his medical conditions.

Defendants again argue that they acted reasonably in light of the circumstances of trying to restore discipline to an unruly prisoner and used the proper force to subdue him.  Thus, the defendants' actions were "justified," thereby entitling them to governmental immunity.

Michigan's governmental immunity statute has an express exception for gross negligence: "[e]ach officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person [if]. . . [t]he officer's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage."  M. C. L. § 691.1407(2)(c).

*Maiden v. Rozwood* addressed the gross negligence exception in a wrongful death action by the surviving spouse of a mental hospital patient.  461 Mich. 109 (1999).  To meet the exception, a plaintiff must offer evidence of conduct "so reckless as to demonstrate a lack of concern for whether an injury results."  *Id*. at 122.  In addition, the test to survive a motion for summary disposition is whether reasonable minds could differ over the issue of gross negligence.  *Id*.

Plaintiff's evidence in support of the § 1983 excessive force claim also supports a finding that reasonable minds could differ over whether the officers' conduct was so reckless as to demonstrate a lack of concern for whether an injury results.  The gross negligence exception is therefore met.

Defendants also claim that Plaintiff will be unable to meet the gross negligence immunity exception because Plaintiff must demonstrate that the officers' actions were the proximate cause of Chambers' death, that is "[t]he one most immediate, efficient, and direct cause."  *Robinson v. City of Detroit*, 462 Mich. 439, 462 (Mich. 2000).  However, proximate cause is generally a factual question for a jury to determine.  *See Schutte v. Celotex Corp.*, 196 Mich. App. 135, 492 N.W.2d 773 (1992).  Reasomable minds could differ on what was the most immediate, efficient and direct cause of Chambers' death, either his heart condition or if found by the jury the excessive force used by the Defendants.  Plaintiff has raised a material question of fact on the issue of proximate cause which should go to a jury.

While there is no express intentional tort exception in the statute, and no such exception is available against governmental agencies or executives in their official capacities, individual

governmental employees are excepted from immunity for intentional torts.  Michigan courts consistently hold that "individual government employees cannot seek immunity for their intentional torts." *Jones v. Powell*, 227 Mich.App. 662, 672 (Mich.App.,1998).  (*See also Sudul v. City of Hamtramck*, 221 Mich.App. 455, 458(Mich.App. 1997); *Blackman v. Cooper*, 89 Mich.App. 639, 643,(1979)).

Defendants state that the guards' actions were justified, and therefore immunity applies even if the actions would be intentional torts in a different context.  Case law does support the general rule: "Governmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified." *Brewer v. Perrin,* 132 Mich.App. 520, 528, 349 N.W.2d 198 (Mich.App. 1984).

However, the availability of a justification defense does not refute the fact that Plaintiff has introduced sufficient evidence to put the intentional tort claims at issue.  On the question of governmental immunity for the named Defendants, Plaintiff survives the  motion for summary judgment on the gross negligence and assault and  battery claims.

### Procedural & Substantive Due Process Claims

During the May '05 hearing, this court dismissed the substantive and procedural due process claims.  The court remarked to Plaintiff's counsel,

> I think what you are doing... is making something that is very straightforward in terms of a factual dispute as to what happened... into a final exam for constitutional civil procedure–1983 constitutional rights cases.... Keep it simple so the judge understands.

Defendants point out that in the June 20, 2005 order this Court stated that Plaintiff was allowed to amend his complaint "to restate his 42 U.S.C. 1983 claims based on Eighth Amendment against Macomb County and Marck Hackel" as well as restate his § 1983 claims based on Eighth Amendment, gross negligence and assault and battery claims against the individual officers.  The order did not permit Plaintiff to restate his substantive and procedural due process claims.

This court dismissed these claims in part because the Eighth Amendment is the sole source of relief for complaints of post-conviction constitutional violations of excessive force.  "After

conviction, the Eight Amendment 'serves as the primary source of substantive protection... in cases... where the deliberate use of force is challenged as excessive and unjustified." *Pelfrey*, 43 F.3d 1036 (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)). The substantive due process claims remain dismissed.

In terms of Plaintiff's procedural due process claim, the cases that Plaintiff cites are inapposite to the case here. The case of *Sandin v. Conner* stated that Due Process Clause protects an incarcerated person's liberty interests from restraints that exceed the original sentence. 515 U.S. 472, 484 (1995). The examples given by the Supreme Court included a case where an inmate was transferred to a mental hospital and where an inmate was involuntary administered of psychotropic drugs. The case here is more properly categorized as an excessive force claim after a prison disturbance. The Plaintiff's procedural due process claims remain dismissed.

**Plaintiff's Motion for Summary Judgment**

Plaintiff has also filed a motion for summary judgment. As has been detailed above, genuine issues of material fact exist in regards to all the remaining claims. Considering Defendants' alleged facts taken in a light most favorable to them, the story of a hostile and possibly violent prisoner who was quickly subdued by the Defendants in a manner consistent with the jail's protocol would relieve them of liability. Thus, summary judgment is inappropriate and the motion is denied.

**Conclusion**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED IN PART** and the claims of both Substantive and Procedural Due Process are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED IN PART** and the claims of excessive force, gross negligence, municipal liability, assault and battery remain.

**IT IS FURTHER ORDERED** that Defendants' request for qualified immunity as well as

municipal immunity are **DENIED**.

      **IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File a Supplemental

Brief is **DENIED AS MOOT**.


                            s/Arthur J. Tarnow                         
                            Arthur J. Tarnow
                            United States District Judge

Dated:  June 27, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 27, 2006, by electronic and/or ordinary mail.

                            s/Theresa E. Taylor                      
                            Case Manager